UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CALVIN SMITH,

                Plaintiff,

- against -

NATIONAL GRID USA,

                Defendant.

------------------------------------------------------------------------X

Case No. 21-cv-6899

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

CALVIN SMITH ("Plaintiff"), by and through his attorneys, PHILLIPS & ASSOCIATES, PLLC, against NATIONAL GRID USA ("Defendant") alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon violations that Defendant committed of Plaintiff's rights guaranteed to him by: (i) **Section 1981 of the Civil Rights Act of 1866**, 42 U.S.C. § 1981 ("Section 1981"); (ii) the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iii) the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3. The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial

district.

## PARTIES

5. At all relevant times herein, Plaintiff was and is a resident of the State of New York and a Black man. He was and is a "person" and an "employee" and entitled to protection as defined by state and federal laws.

6. At all relevant times herein, Defendant is a Delaware corporation with a principal place of business located at 40 Sylvan Road, Waltham, Massachusetts.

7. At all relevant times herein, Defendant "employs" fifteen and thus one or more "employees," and is thus an "employer" within the meaning of the NYSHRL and the NYCHRL.

## MATERIAL FACTS

8. On October 1, 2012, Plaintiff began working for Defendant as a Mechanic in the Fleet Unit, a department of Defendant. At the time, Plaintiff was the only Black employee in the Fleet Unit and the only Black union employee in Defendant's downstate region.

9. In 2014, Plaintiff took a position as a Parts Person, before returning to the Mechanic position at a different location in 2017.

10. On October 15, 2018, Plaintiff was promoted to Lead Auto Technician where he earns over $107,000 per year.

11. Plaintiff is a highly skilled automotive and heavy equipment mechanic, and a union representative.

12. Throughout his employment with Defendant, Plaintiff's work performance always met or exceeded the reasonable expectations of Defendant.

13. Throughout his employment, Plaintiff was continually subjected to harassment and discrimination due to his race and retaliation for opposing the illegal harassment and

2

discrimination.

14. In 2014, after assuming the role of Parts Person, Plaintiff was subjected to an increased level of scrutiny by Louis Vetrano ("Vetrano"), Manager Downstate Fleet Department, Kerry Martin ("Martin"), Senior Supervisor, and Pete Polumbo ("Polumbo"), Lead Auto Technician, not applicable to his similarly situated white co-workers.

15. Additionally, Vetrano and Martin denied Plaintiff training opportunities available to his white co-workers, Martin falsely accused Plaintiff of subpar performance and Polumbo falsely accused Plaintiff of assault.

16. The over scrutinization and false accusations took a significant mental toll on Plaintiff, causing him to suffer anxiety, nightmares and daily headaches.

17. On September 25, 2014, Plaintiff complained to Vetrano, Martin and Tony Caban, Auto Technician and Shop Steward about the disparate treatment to which he was subjected.

18. On September 30, 2014, Plaintiff also emailed a complaint regarding the targeting and discrimination described above to Defendant's ethics hotline.

19. Defendant failed to address Plaintiff's complaint so, on March 9, 2015, Plaintiff filed a grievance with his union regarding the discrimination.

20. Defendant still failed to act on Plaintiff's complaint and, upon information and belief, placed Plaintiff on administrative leave and required that he seek counseling to keep his job as a result of his complaint.

21. In 2018, before Plaintiff was due to be promoted to Lead Auto Technician under the terms of his union's contract with Defendant, Defendant launched a spurious investigation into Plaintiff for allegedly stealing time in an evident effort to stop his promotion.

22. Given the false nature of the allegations, the accusation of stealing time was not substantiated and Plaintiff was ultimately promoted.

23. On January 27, 2020, Martin accused Plaintiff of falsifying records for closing out a pm service request on a vehicle and performing the work on a deviation ticket instead. Martin made this accusation towards Plaintiff despite the fact that this was common practice among technicians with Defendant.

24. Shortly thereafter, Plaintiff complained to Jason Parks ("Parks") that he was unfairly singled out by Martin's accusation and that he felt the accusation was racially motivated.

25. Parks took no action on Plaintiff's complaint and on May 7, 2020, Plaintiff met with Diane Demchak ("Demchak"), HR Liaison, to again complain about the racially motivated disparate treatment. Plaintiff also specifically highlighted for Demchak two other incidents where white technicians took the same action as Plaintiff without any accusation by Martin.

26. In or around June 2020, a white employee, Patrick Clark ("Clark") called a Black employee in the department, Tarik Boyd ("Boyd"), a "monkey."

27. On June 22, 2020, Plaintiff followed up with Demchak concerning his May 7, 2020 complaint and further complained to her about Clark calling Clark a "monkey."

28. Notwithstanding the fact that Clark had previously referred to a Puerto Rican employee a "spic," Defendant's only action was to suspend Pat for a mere ten days. Moreover, Defendant failed to take any action on Plaintiff's initial complaint concerning the false accusation.

29. Boyd ultimately transferred to another location out of fear of Clark, who openly proclaimed to Plaintiff that he had "problems" over reporting of his use of a racial epithet.

30. In or about mid-July 2020, Plaintiff learned that other white employees in the department were upset with Plaintiff for reporting Clark's use of the racial slur and blamed him for Clark's suspension. Plaintiff was informed that the other employees, who were all white, were now "against" him.

31. Shortly thereafter, in late July 2020, Plaintiff found the words "Shine Box" written on a lockbox on his desk, which Plaintiff was required to use every day to perform his job. Upon knowledge and information, "shine box" is a racial slur, playing on the derogatory use of the word "shine" for Black people, linked to the idea that a workbox for a Black person would be "shoeshine" box.

32. Polumbo, who is white and the son of a high-level manager with Defendant admitted to writing it. Indeed, Polumbo was specifically advised by a co-worker, before Plaintiff's complaint, that the "shine box" was offensive. However, he responded "fuck you. I do what I want."

33. On July 29, 2020, Plaintiff made a complaint about the racial graffiti written on the lockbox.

34. Defendant investigated the "shine box," but took no action towards Polumbo, claiming it was not racial because Polumbo did not "mean it that way" and was referencing a movie. Indeed, the only action undertaken by Defendant was merely to paint over the words "shine box" and the lockbox remains on Plaintiff's desk to this day.

35. On July 30, 2020, the day after Plaintiff's complaint, Polumbo told Plaintiff that "the day shift," all who are white, "is officially done with [him]." Polumbo further told Plaintiff "shame on [him] for reporting them."

36. That same day, Plaintiff sent an email to union representatives, Joseph Coscia and Constance Bradley, complaining about disparate treatment meted out to him on the basis of his race and the harassment he suffered.

37. Following his complaint, white employees on the day shift stopped greeting Plaintiff and ceased communicating with Plaintiff even when it related to the daily operations of Defendant's business. This has made it substantially more difficult for Plaintiff to perform

5

his job duties.

38. After his complaint, Plaintiff also discovered Trump 2020 posters papered across his work area, which Plaintiff considered an intimidatory tactic.

39. Upon information and belief, Polumbo and Martin also began to spread false rumors among Plaintiff's co-workers claiming that he is a "snitch" and not to be trusted.

40. As Plaintiff's concerns about the hostile work environment grew progressively worse, he experienced emotional distress and mental anguish affecting his ability to perform in the workplace.

41. Defendant also has a history of disparate treatment against Black employees in terms of training opportunities and disciplinary actions within Defendant's Fleet Unit, where there is a lack of representation of Black employees and a hostile work environment for the few Black employees that do work there.

42. For example, on October 23, 2020, Plaintiff complained to management that a Black employee was denied the opportunity to seek a CDL through Defendant, while his white counterpart, with less seniority and experience than the Black employee, was granted the opportunity.

43. Likewise, Plaintiff was also denied the opportunity to amend his own CDL license to remove a restriction, even though there was need in the department for technicians with unrestricted licenses.

44. On October 23, 2020, Plaintiff also specifically advised management of yet another example of disparate treatment towards Black employees in that a white employee in the Parts Person position was permitted to work for nearly one year with a known OSHA violation in his work area, whereas Black employees who previously occupied that same position, including Plaintiff, were immediately reprimanded for unknown OSHA

violations and subjected to heavy scrutiny.

45. **<u>Defendant's actions and conduct were intentional and intended to harm Plaintiff</u>**.

46. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

47. Additionally, as a result of Defendant's discriminatory treatment of Plaintiff, he has suffered pecuniary loss, severe emotional distress, and physical ailments.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

49. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against Defendant.

## FIRST CAUSE OF ACTION
*Race Discrimination in Violation of Section 1981*

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

51. 42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

52. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

53. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment and adverse employment actions due to his race.

7

## SECOND CAUSE OF ACTION
*Retaliation in Violation of Section 1981*

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

55. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

56. Defendants acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

57. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

## THIRD CAUSE OF ACTION
*Race Discrimination in Violation of the NYSHRL*

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

60. As described above, Defendant discriminated against Plaintiff on the basis of his race in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's race.

61. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an

award of monetary damages and other relief.

62. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

63. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL*

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

66. As described above, Plaintiff engaged in protected activities, including, but not limited to, making internal complaints regarding Defendant's discrimination against Plaintiff based on race.

67. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendant took actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

68. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional

9

distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

69. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
*Race Discrimination in Violation of the NYCHRL*

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

72. As described above, Defendant discriminated against Plaintiff on the basis of his race in violation of the NYCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

73. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

74. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

        including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

75. Defendant's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
*Retaliation in Violation of the NYCHRL*

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

78. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding Defendant's discrimination based on Plaintiff's race.

79. As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendant took actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

80. As a result of Defendant's retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages

and benefits and other compensatory damages, and other relief.

81. Defendant's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

82. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Section 1981, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of his race and retaliated against him for opposing such discrimination;

B. Restraining Defendant from any retaliation against Plaintiff for participating in any form in this litigation;

C. Declaring preliminary and permanent injunctions against Defendant and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

D. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

F.      Awarding Plaintiff punitive damages;

G.     Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

H.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Garden City, New York
December 14, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

_____/s/_____
Marjorie Mesidor
Joseph Myers
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
mmesidor@tpglaws.com
jmyers@tpglaws.com